J. B. COLT CO. *v.* HARRIS *et al.*

(Division A.   Jan. 11, 1937.)

[171 So. 695.   No. 32426.]

**Bozeman & Cameron,** of Meridian, and **Lester E. Wills,** of Yazoo City, for appellant.

538

C. E. Johnson, of Union, for appellees.

Argued orally by **Lester E. Wills**, for appellant.

**McGowen, J.**, delivered the opinion of the court.

The appellant, J. B. Colt Company, brought an action at law to recover the amount of two promissory notes,

one for two hundred seventy-six dollars, due November 1, 1930, and the other for ninety-one dollars and sixty cents, due November 1, 1931, from T. M. Harris and his wife, Mrs. Nellie Harris. Both notes were dated September 12, 1929, and provided for eight per cent. interest per annum after maturity and ten per cent. attorneys' fees for collection.

The appellees filed a plea of the general issue and three special pleas. Special plea No. 1 set up a breach of the warranty contained in the contract of sale; special plea No. 2 alleged that the contract and notes were obtained by fraudulent misrepresentations; and special plea No. 3 alleged that there was no consideration for the notes and contract, because the purchase made thereby was of a light and cooking outfit, and that certain parts of the light and cooking outfit were not delivered, and therefore the outfit was useless and worthless. Issue was joined on these pleas, and the county judge heard the evidence without the intervention of a jury and entered a judgment in favor of the appellees. From that judgment an appeal was prosecuted to the circuit court, where the case was affirmed, and the appellant, J. B. Colt Company, appeals here.

In the court below the appellant introduced the notes and the written contract and rested its case. The notes were dated September 12, 1929; the contract was dated August 31, 1929, and, in terms, was an order addressed to J. B. Colt Company, at Birmingham, Ala., by T. M. Harris and Nellie Harris, in which they ordered one Colt lighting and cooking outfit and one Colt carbide generator, model S; the total price to be paid therefor being three hundred sixty-seven dollars and fifty cents. This order or contract was accepted on September 9, 1929.

By section 2 of the contract the appellant warranted the generator to be of automatic-in-action type, and of good material and workmanship, and listed by Underwriters' Laboratories as in accordance with its stand-

ards of construction. By section 3 thereof, the Colt Company agreed to repair the generator or ship another without charge to purchaser if the generator did not conform to such warranty, provided the purchaser, within sixty days after ascertaining the said generator, did not conform to the warranty, notified the company thereof, and delivered the generator to the company's factory, with transportation charges prepaid, and provided, further, that such repair or replacing of the generator should be the company's sole obligation under said warranty, and that no notice or communication should be binding on the company unless sent by registered mail to its stated address. By section 4, the purchaser agreed that the company was not to install the plant nor to permit trial use thereof, and that no implied warranty accompanied the sale; by section 5, it was provided that the written contract contained all the agreements and, warranties, either express or implied, with respect to the merchandise and the terms and conditions of the sale thereof, and that the contract could be canceled by the purchaser before the shipment of the goods. Section 6 thereof is in the following language: "No representative of company has authority to make, and purchaser hereby warrants to company that purchaser is not relying upon, any statement, representation, warranty or agreement, oral or written, other than such as are herein set forth, leading up to or inducing the entering into of this agreement or the purchase of the merchandise."

The testimony of the appellees is to the effect that the cooking and light plant was received, with the exception of a light shade, which was replaced, and that the plant was installed by one Wicker, selected by the purchaser's agent so to do; and that the lighting fixtures in their house did not work, and, in addition, unburned gas escaped out of the piping in the house; that the plant wasted carbide, the fuel used in operating the plant; and that in the dining room of their residence

there was such an offensive odor caused by the escape thereof, they could not remain in the room. They testified that within three months they had used two hundred pounds of carbide. A letter was written to the company's office by the appellees advising that they desired the plant fixed. The company was also advised by its agent that two parts were missing in connection with the lighting equipment, No. 524 and No. 71. No. 524 was a light shade, but the record does not disclose what No. 71 was. Appellee stated that he never received that fixture. The correspondence disclosed that the company undertook to send the fixture to Harris, but that the leaking carbide was never stopped. Mrs. Harris testified that she did not use the cooking outfit because the flame generated was too intense.

Their testimony was further to the effect that agents by the name of Jones sold them the plant one night, remaining at their home from seven o'clock until two in the morning; that before the contract was executed, these agents represented to them that the generator was made of battleship steel which would not rust—that "it could be thrown into the ocean and be left there for a thousand years and it would not rust"—and that the tank was made of copper. No witness seemed to know what constituted battleship steel. Harris and his wife testified that the generator and tank were not constructed of the material represented by the agents, that the parts thereof rusted, and that it did not create the kind of light the agents had represented it would to them.

Harris testified that the agents represented to him, before the execution of the contract, that two hundred pounds of carbide would last from twelve to fourteen months, but that he used that amount in about three months; that he had told representatives of the appellant that they could come and get the plant, as he did not want it. He did not return the plant, freight prepaid, to the appellant, nor was any letter introduced in

evidence to that effect. Correspondence was had about the missing part No. 71, from February to April, 1930, inclusive. On November 6, 1930, about the time the first note became due, Harris wrote the appellant as follows: "Owing to bad and shortage conditions of the crop this year it will be impossible for me to pay the note this year. But I will pay the interest on this note. I am sorry that conditions are such but it cannot be helped, I will appreciate your kindness in this matter."

The appellees offered Ferguson, a former employee of the appellant, who testified that while he was in the employ of the company as salesman, a representative of the Birmingham office would hold meetings of the agents at Meridian, Miss., instructing them as to the sale of the lighting outfit or plant, and to say that the generator was constructed of battleship steel, and that it would not rust, that it could be "thrown into the ocean and left there for a thousand years and it would not rust," and other similar statements. He testified that he did not know what battleship steel was, nor did he know whether or not the plants were constructed of the material the agent was representing. He also testified that if the plants were properly installed, they would furnish light, but that he thought the representation as to the plant was overstated and it was sold for entirely too much.

The appellees testified further that when the contract of purchase, or sale, was prepared and presented that he (Harris) commenced to read it and the agent stopped him, telling him that "it did not amount to anything and that there was no use in reading it," and that thereupon they signed it without reading it.

The appellant company objected to all the testimony tending to vary the written contract. Rulings were reserved by the court, but evidently the court considered all the evidence favorable to the appellees, which we have detailed.

1. The statement attributed to the appellant's agent,

when Harris began to read the contract, that "it did not amount to anything and that there was no use in reading it," constitutes no fraud; nor do any representations not contained in the written contract which the appellees signed, and therefore the contract is as binding upon the appellees as if they had read it before they signed it. See Continental Jewelry Co. v. Joseph, 140 Miss. 582, 105 So. 639; 13 C. J. pp. 370 and 371, sections 249 and 250.

2.   It will be observed that the written contract was an offer by Harris and his wife to purchase the plant involved from the Colt Company, sent to the latter to be accepted by it, which was done; and their acceptance, of course, was based upon the terms of the contract in which appellees plainly stated to the appellant that they were not relying upon any statement or representation which was not contained therein; and the evidence as to the representations, which we have already detailed and therefore are unnecessary to repeat, was incompetent and should have been excluded by the court.   The representation of the agent in this case in procuring the written order was not binding upon the company.   See J. B. Colt Company v. Odom, 136 Miss. 651, 101 So. 853.

On the plea of total failure of consideration there was no evidence that tended to show that the generator, tank, and other parts were not as described particularly in the written contract entered into between the parties; and it is quite clear from the evidence that the defect complained of regarding the lighting plant was due to improper installation which caused the leakage of the gas, and that when the testimony of both parties is taken into consideration, part No. 71 of the outfit was a replacement.   Harris undertook to testify that the lighting plant was not worth anything to him as such.   He did not return it, in accordance with the contract, if same did not conform to the warranty therein or was unsatisfactory; in fact, fourteen months after the execution of the notes, and even longer from the execution of the con-

tract, he wrote a letter in which he gave, as his sole reason for failure to pay the notes, bad crop conditions. After retaining the property, he might have, by plea of offset or recoupment, shown the difference between the value of the plant which he bought under the written contract and its value at the time it reached him; but he could not, under the proof in this record, vacate or avoid the contract. As has been said before, the plant was worth something; the carbide furnished with it by the company was worth something; and under these facts there was no breach of the warranty. The rule is clearly stated in J. B. Colt Co. v. Mazingo, 141 Miss. 402, 106 So. 533.

Both the county and the circuit courts erred in this case. Judgment should have been rendered for the appellant, J. B. Colt Company, for the principal of the notes with eight per cent. interest thereon from the date of their maturity and ten per cent. attorneys' fees.

Reversed, and judgment here.